## *EX PARTE* ALLISON.

HOMESTEAD—REV. STAT., 2126, 2130.—A resident sold his house and lot under an executory contract and put purchaser in possession, but before deed was executed or purchase money paid, he executed an assignment for the benefit of his creditors.   Before any judgments were obtained against him, he filed his petition, asking for homestead in the house and lot so sold.   *Held*, that he was entitled to a homestead as in realty against all persons except his vendee, or to $1,000 of the purchase money.   Rev. Stat., secs. 2126, 2130, *construed*.

Before FRASER, J., Yorkville, July 11, 1895.   Modified.

Petition by W. M. Allison for homestead as of realty in house and lot sold by him under executory contract to W. B. DeLoach.

The following is the Circuit decree:

This case came before me on exceptions to the homestead as laid off by the commissioners.   It is a case in which no process has been issued.   The commissioners in their return set off both real and personal property.

1st.   As to the real estate.   The real estate set off by the commissioners is a part of a lot of land in Yorkville, containing 4⅞ acres, and purchased by the petitioner from Mr. McNeel.   The petitioner was a member of the firm of Cartwright & Co., and the purchase from McNeel was made

before the formation of the partnership. The petitioner paid McNeel out of his own funds $800, and gave his bond and mortgage to McNeel for $1,200. The petitioner then paid the McNeel bond and mortgage with money borrowed on a new bond and mortgage from a Minneapolis company, the money being borrowed under some special arrangement as to monthly payments. On the 8th of January, 1889, petitioner drew from the partnership funds the sum of $78, which was charged to himself on the books of the firm, and paid it to McNeel before he got the Minneapolis money. The petitioner, who seems to have been the managing partner, put into the firm and to his own credit $1,100, over and above what he put in at the beginning as his contribution to the business. At the time this deposit was made, the petitioner had drawn out from the assets of the firm $2,068.77 and Cartwright $1,642.24. For a good long time after this deposit the petitioner drew from the assets of the firm $21 monthly and paid the same to the Minneapolis company, and continued to do so until the execution of the general assignment hereafter referred to. On the 12th July, 1893, petitioner entered into a written contract with W. B. DeLoach to sell and convey to him the McNeel lot, or at least so much of it as has been set off as a homestead, and put him in possession of his dwelling house on the premises. DeLoach is ready and willing, and has offered to pay the purchase money according to the terms of the written contract. On the 1st February, 1894, the petitioner and his copartner, Cartwright, executed a general assignment for the benefit of creditors, reserving the right of homestead. The lot of land covered by this written agreement with DeLoach has been set apart to petitioner as his homestead. Neither the firm nor the creditors have a right to regard this $800 as anything than individual property, and the lot to that extent was certainly paid for with individual assets. If the $21 paid monthly drawn from the firm can be held to be partnership assets, on the ground that the deposit of $1,100 should have had the effect of paying the petitioner's account to the firm, it

seems to me clear that he did not pay this money on the land at all. The land debt to McNeel had been paid in full, and the debt to the Minneapolis company was only a personal debt, secured by a mortgage of this lot. I might have some doubt as to the $78 paid to McNeel, if there was anything to show that his creditors, who are movers in this matter, were such at the time this payment was made, or were in any position to object to a voluntary transfer of the firm assets. I take it that the lot of land became the individual property of the petitioner and continued such, and was real estate until converted by himself into personalty by his contract or sale with DeLoach. It is true, that the petitioner holds a legal title, but "he holds the legal title as security for the performance of the vendee's obligation and as trustee for the vendee (DeLoach), subject to such performances." On the other hand, the vendee becomes by conversion the real beneficial though equitable owner of the land, which descends to the heirs at law, while the purchase money goes to the personal representatives. Pomeroy Eq., §§ 105, 1261. I see no more reason why Allison should have a homestead in realty than any other trustee.

2d. As to personalty. While, therefore, I hold that the land has been converted into personalty, and there is no homestead in land, there is a homestead in the money due DeLoach as the purchase money of this land. If the land was not partnership property because of the transaction above referred to, the purchase now due by DeLoach cannot be. The doctrine on this subject is well laid down in Pomeroy's Equity, sec. 1048. I construe the return of the commissioners to mean that the personalty is to be allowed, not out of any funds in the hands of the assignee coming from partnership assets, but from individual assets, such as the money due by DeLoach for the land above referred to.

It is, therefore, ordered, that the return of the commissioners, so far as it sets off real estate in this case, be set aside, and so far as it directs the payment of money, be con-

firmed—the money to be paid out of individual assets of the petitioner, as above indicated.

From this decree the petitioner appeals upon the following exceptions:

1. In holding that the contract of bargain and sale existing between the petitioner and W. B. DeLoach, touching the Allison Home Place, offered in evidence, deprived the petitioner of his right of homestead therein, in the face of the fact that the title still remained in the petitioner; that no part of the purchase money had been paid, and that the petitioner was, and is, a resident of said State, and the head of a family.

2. In holding that the trust relation existing between the petitioner and the said DeLoach, arising out of the said contract, converted the homestead into personalty, as regards the creditors of petitioner.

3. In not confirming the return of the commissioners so far as it set off to the petitioner a homestead in lands by metes and bounds.

*Messrs. C. E. Spencer* and *T. F. McDow*, for appellant.

*Messrs. Hart & Hart* and *W. B. McCaw*, contra.

Oct. 10, 1895. The opinion of the Court was delivered by

MR. JUSTICE GARY. On the 12th day of July, 1893, an agreement in writing was entered into between W. M. Allison, of the first part, and W. B. DeLoach, of the second part, whereby the party of the first part covenanted to convey to the party of the second part his house and lot in the town of Yorkville, for and in consideration of the sum of $2,200, to be paid as follows: "On or about January 25th, 1894, on the delivery of the deed, the sum of $1,000 and the sum of $1,200—$600 of said sum of $1,200 to be paid January 1st, 1895, and $600 to be paid January the 1st, 1896. Said sums to be secured by a bond and mortgage of said premises, with interest at seven per cent. per annum.

And the said party of the second part does covenant and agree to and with the said party of the first part, that the said party of the second part will pay the said several sums as they severally become due, with interest thereon at seven per cent. per annum."

On or about the 25th day of January, 1894, W. B. DeLoach called upon the said W. M. Allison and apprised him that he was ready and prepared to comply with the terms of said agreement; but the said W. M. Allison stated that he could not then make to the said W. B. DeLoach a deed of conveyance with warranty, on account of not having under his control a certain mortgage held* by the A. B. & L. Association, but placed the said W. B. DeLoach in possession of the premises, which possession he has since retained. Thereafter, on the 1st day of February, 1894, W. M. Allison made and executed a deed of assignment to T. F. McDow, Esq., embracing the aforesaid premises, but subject to the equities of W. B. DeLoach, and reserving the rights of homestead. Thereafter, on the 27th day of February, 1894 (W. B. De-Loach being then as now in possession of the premises), W. M. Allison filed his petition in the office of the clerk of the Court of Common Pleas for York County, praying for an allotment of homestead out of said premises. The petitioner was then, as he still is, the head of a family, and a resident of this State, and at the time of his petition no process had been issued against his property.

Appraisers were duly appointed, who made and filed their return according to law, to which return the creditors of petitioner filed exceptions within thirty days after the filing of said return. Upon their exceptions and the testimony taken in open Court, the case was heard by his Honor, Judge Fraser, who, on the 13th day of July, 1894, made and filed his decree, which, together with appellant's exceptions, will be incorporated in the report of the case.

The exceptions raise practically but the one question, whether the Circuit Judge was in error in refusing to allow the appellant his homestead in said house and lot. Section

2126 of the Revised Statutes provides that: "A homestead in lands, whether held in fee *or any lesser estate*, not to exceed in value $1,000, with the yearly products thereof, shall be exempt to the head of every family residing in this State from attachment, levy or sale," &c. Section 2130 provides that: "No waiver of the right of homestead, however solemn, made by the head of a family at any time prior to the assignment of the homestead, shall defeat the homestead provided for in this chapter: *Provided, however*, That no right of homestead shall exist or be allowed in any property, real or personal, *aliened or mortgaged*, either before or after assignment, by any person or persons whomsoever, *as against the title or claim of the alienee or mortgagee, or his, her or their heirs or assignees*" (italics ours.) The *legal* title is unquestionably in the petitioner, W. M. Allison. Pom. Eq. Jur., vol. I., secs. 367, 368, 105; *Id.*, vol. III., secs. 1260, 1261. The foregoing authorities also show that the *legal* title of the vendor in such cases may be conveyed or devised, and upon his death will descend to his *heirs*. The cases of *Richards* v. *McKie et al.*, Harp. Eq., 184, and *Bogert* v. *Perry*, 17 John, 351 (referred to in Harp. Eq. as *Rogers* v. *Perry*), show that it is questionable, whether the vendor becomes a trustee for the vendee until payment of the purchase money *in full*. The agreement aforesaid was neither an "alienation" nor a "mortgage." *Hendrix* v. *Seaborn*, 25 S. C., 481. And even if it could be regarded as either an "alienation" or a "mortgage," the petitioner's right of homestead would exist and be allowed against every one except DeLoach, his heirs or assigns. See *Wood* v. *Timmerman*, 29 S. C., 175; *Martin* v. *Bowie*, 37 S. C., 102. Not only will the law allow the debtor a homestead when he holds the *legal* title, but even when he has only an *equitable* title, to the property. Ency. of Law, vol. IX., page 425; *Munroe* v. *Jeter*, 24 S. C., 29; *Ex parte Kurz*, 24 S. C., 468. W. M. Allison has not only the legal title to the property, but he has a beneficial interest therein to the extent of $1,000 of the unpaid purchase money. To deny his right of homestead under such

circumstances would be both against the letter and spirit of the Constitution and Statutes of our State relating to homesteads.

It is the judgment of this Court, that the judgment of the Circuit Court be modified, and that the case be remanded to the Court of Common Pleas for York County, for the purpose of carrying out the views herein announced.

MR. JUSTICE POPE, *concurring*.    Inasmuch as the judgment herein pronounced does not pass upon the rights of W. B. DeLoach as affected hereby, I concur.